## In re Anonymous No. 8 D.B. 78

Disciplinary Board Docket no. 8 D.B. 78.

PEARLSTINE, *Board Member*, November 15, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 9, 1978, a petition for discipline was filed by the office of disciplinary counsel charging respondent with various acts of violation of the code of professional responsibility and canons of professional ethics.

Respondent filed no answer to said petition and in due course the matter was assigned to a hearing committee [ ], consisting of [ ], chairman, [ ] and [ ]. The hearing was held as scheduled on May 15, 1978, at the [ ] county court house. After hearing 10 witnesses and considering 38 of petitioner's exhibits, including a stipulation of the parties, the matter was continued and was held on June 5, 1978, in the city of [ ]. On May 22, 1978, a petition for emergency interim suspension was filed with the Supreme Court and on the same day an order was entered to respondent to show cause why he should not be immediately suspended from the practice of law. On June 7, 1978, the order of the Supreme Court suspending [respondent] from the

practice of law, pursuant to Rule 208(f), was entered. On the next day, June 8, 1978, an order of the Court of Common Pleas of [A] County, Pa., was filed impounding all files in respondent's offices and on June 9, 1978, [ ], Esq., the court administrator, was appointed as conservator of all unfinished legal cases. On the same day, the Court of Common Pleas of [A] County entered a sequestration order and decree directing the sheriff of [A] County to sequester all accounts, funds, securities or other valuable property of respondent. On June 9, 1978, respondent was duly notified of this action and on the same date notification was filed with the National Discipline Data Bank that respondent was suspended for an indefinite period.

On July 13, 1978, the hearing committee filed its report recommending a three-month suspension. A brief on exceptions was filed by the office of disciplinary counsel asserting that the recommendation be modified and that the discipline be a suspension of at least three years. Respondent represented himself at the hearings and cross-examined several of the witnesses. He has not filed any exceptions to the hearing committee's report.

## II. DISCUSSION

The report of the hearing committee carefully analyzed the evidence with respect to the two charges contained in the petition. As to Charge I, the hearing committee found that the conduct of respondent constituted violations of Disciplinary Rules 1-102(A)(4), (6); 9-102(A),(B)(1), (3), (4).

As to Charge II, the hearing committee found respondent to have violated Rules 1-102(A)(4), (6); 7-101(A)(3); 7-104(A)(1); 9-102(A); 9-102(B)(1), (3), (4).

## CHARGE I:   THE [B] MATTER

In about July of 1977, Mr. and Mrs. [B] sold a piece of property in [   ], Pa. and left for Texas. The closing was held on September 12, 1977, which the [Bs] did not attend. Respondent received $100 fee for representing the [Bs] at the closing and received a cashier's check drawn on the National Bank of [A] in the sum of $16,532.82, being the proceeds of the closing. On September 14, 1977, he endorsed the names of his clients and deposited the check in his attorney's account. His clients did not authorize the signatures either by a power of attorney in writing or orally and the signatures were forged. Thereafter, the [Bs] called respondent from time to time to secure the proceeds of the closing, without success. They then engaged counsel in Georgetown, Texas, who made a demand upon respondent and the National Bank of [A] for payment of the check. Sometime thereafter the [Bs] received a check from respondent dated October 4, 1977, made payable to them, which upon negotiation was returned N.S.F. On October 26, 1977, the [Bs] informed respondent that his check had been dishonored and he advised them that he had already wired funds to their bank in Texas. Upon the demand of Texas counsel on the [   ] Bank, the attorney's account of respondent was impounded. At that time there was $11,115.53 in the account, although from September 14 when the deposit of $16,558.20 was made until October 17, 1977, the balance in the account continued to drop to its low of $1,057.75.

On November 9, 1977, [respondent] received a cashier's check made payable to his barber, [C], in the amount of $4,000, which was deposited by respondent in his attorney's account, which check was given to [respondent] for the purpose of enter-

ing into a real estate deal to buy a piece of property at a tax sale in [ ] Township, [A] County, Pa. On or about May 1, 1978, [C] was making requests upon [respondent] for information on the alleged purchase. There was in fact no such piece of land for sale and this was a ruse in order to secure $4,000 from Mr. [C].

On October 17, 1977, Mrs. [C] received a decree in divorce from her then husband. The litigation was contested. She expected to receive $6,500, being the fair market value of one-half interest in real estate owned by herself and her husband as tenants by the entireties. Instead respondent received $3,000 in the form of a check drawn to the order of Mrs. [C] and himself. He unauthorizedly endorsed her name on the check and she never saw the check until the date of the hearing on May 15, 1978. These checks totalling $7,000 together with the balance impounded by [ ] Bank were sufficient for them to make out a cashier's check which their counsel, [ ], Esq., mailed to the [Bs] on November 9, 1977.

## CHARGE II:  THE [E] MATTER

On June 12, 1977, Mr. [D] and [E] were on a motorcycle. [E] was a guest. They were struck by a man by the name of [F], who was insured in the [G] Insurance Exchange. [D] knew respondent and went to him to be represented. Despite frequent calls, respondent claimed he was negotiating with [G], [D] called an adjustor for [G] and learned that no contact had been made by respondent. On August 22, 1977, [D] obtained a letter of release from [respondent] and settled his own case directly for $1,800.

On October 17, 1977, respondent having been engaged also to represent [E] through the recommendation of Mr. [D], received a check from [G] for

$8,000, made payable to the order of [E] and respondent. Respondent forged [E's] endorsement and then gave her a check for $3,000 because she needed it to buy a new car and he stated that he would pay the medical bills, reimburse the Commonwealth of Pennsylvania, Department of Public Welfare, for various advances as follows: [   ] Medical Center $1,756 and D.P.W. $784.

Respondent agreed that his fee would be less than one-third, but to the date of the hearing he failed to pay bills and still holds possession of the sum of $5,000 and would have been entitled to a fee of somewhere between $2,666 on the basis of one-third or $2,000 if the fee would have been 25 percent.

When [E] could not secure any satisfaction from her demands on respondent she went to attorney [H], who tried to negotiate a settlement with [F] for $10,000 without success. He recommended that suit be instituted against [F] because the release was invalid and the check was forged. This action is presently pending.

When respondent learned of the representation of [E] by [H], he said he would pay an extra $2,000 out of his own pocket and would also waive his fee, if she would "forget the whole thing." She refused to discuss the matter and referred him to attorney [H]. She learned that the only bill that he actually paid was to an orthopedist in the sum of $379.

At the time of the hearing respondent declined to testify or present witnesses, although he was personally present and conducted cross-examination of the witnesses. He asked for a continued hearing for the purpose of obtaining another witness, but failed to do so. He was subpeonaed duces tecum to bring in books and records and failed to do so although promising to have them available and sub-

mitting lame excuses of why he did not read the subpoena.

From petitioner's suspension order it appears that there are certain other complaints, viz., the [I] matter, see hearing of 4/78, p. 173, in which the respondent received $23,794.85 from the Social Security Administration for Mr. [I] and was to receive a $4,000 fee therefrom and was to pay certain debts in the total sum of $6,100, with the balance of the funds to be returned to Mr. and Mrs. [I]. Mr. and Mrs. [I] received $10,545 in the form of three checks and respondent has failed to pay $6,100 worth of debts or account to Mr. and Mrs. [I] for the balance.

In another matter referred to in the complaint, the [J] matter, no. [ ], wherein respondent was representing [J], executor and sole beneficiary of the estate of [ ], on July 6, 1977, he requested [J] to let him have $1,200 which would be needed to pay the inheritance tax. [J] borrowed the money from his bank, gave the money to respondent, and he has failed to account or pay the inheritance tax. As late as May 5, 1978, the Inheritance Tax Division advised Mr. [J] that since a return had not been filed, he was to appear in court on May 25, 1978, in response to a citation.

The bank accounts of respondent were closed by [ ] bank, the attorney's account having a balance of $93.39 on December 15, 1977, and the trustee's account having a balance of $1.63 on March 31, 1978.

Adopting the comments of the hearing committee, respondent has been less than candid in his statements and representations to the committee. Although he promised to produce certain records and was subpoenaed to do so, including his cancelled checks drawn on his attorney's account, he did not do so and when the hearing committee con-

tinued the hearing in [A] on May 15, 1978, for the purpose of allowing him to obtain the records, this was never done. Respondent failed to file a response to the petition for discipline, failed to appear at one scheduled pre-trial conference without any explanation for his absence and failed to appear at the continued hearing which was held on June 5, 1978.

Respondent is a graduate of the University of Pittsburgh School of Law. He was admitted to practice in the Commonwealth of Pennsylvania in 1969 and heretofore maintained his office in [A], Pa.

By virtue of the serious charges consisting of dishonesty, fraud, deceit, misrepresentation and conduct which adversely reflects on an attorney's fitness to practice law, we make the following

## III. RECOMMENDATIONS

The board recommends that respondent be disbarred forthwith in accordance with Rule 204(1) of the Pennsylvania Rules of Disciplinary Enforcement.

Messrs. Reath and Schiavo did not participate in the adjudication of this matter.

## ORDER

EAGEN, *C.J.*, And now, January 6, 1979, the report and recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated November 15, 1978, is hereby accepted; and it is ordered, that said [respondent] be, and he is forthwith disbarred in accordance with Rule 204(1) of the Pennsylvania Rules of Disciplinary Enforcement, from the practice of law in this court and all the courts under its supervisory jurisdiction and until further order of the Supreme Court.